ROSALINE M. DEMELLO *vs.* SAINT THOMAS THE APOSTLE
CHURCH CORPORATION OF WARREN.
JOSEPH (JOSE) DEMELLO *vs.* SAINT THOMAS THE APOSTLE
CHURCH CORPORATION OF WARREN.

NOVEMBER 21, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. These are actions of trespass on the case for negligence which were tried together in the superior court before a justice thereof sitting with a jury and resulted in a verdict for each plaintiff. Each case is here on the defendant's exceptions to the overruling of its demurrer to each count of the second amended declaration, to the denial of its motion for a directed verdict, and to the denial of its request for certain instructions to the jury.

The actions were brought by a wife and husband respectively to recover damages resulting from an injury allegedly sustained by the wife when she fell on property controlled by defendant. Since the husband's case depends on defendant's liability to the wife we shall consider the exceptions in her case although our decision will apply to both cases.

The second amended declaration contains four counts, and alleges that defendant owned and controlled certain property on the easterly side of Metacom avenue near the intersection of that avenue and Franklin street in the town of Warren and that while on said property on January 25, 1957 plaintiff fell and received a severe injury. The defendant demurred to each count on the ground that it appeared that plaintiff was a licensee to whom the defendant did not owe the duty alleged to exercise reasonable care to maintain a certain cement walk in a safe condition. The demurrer was overruled.

In the pre-trial order it was stipulated that if plaintiff proved that defendant was in control of the premises on which the accident happened, the case might proceed as if there had been an allegation of ownership. Thereafter the case was tried on the merits and at the conclusion of the evidence the defendant's motion for a directed verdict was denied. The defendant then requested the trial justice to instruct the jury that plaintiff, while on its property, was not an invitee but rather a licensee, which request was denied. Following the verdict for plaintiff, defendant did

not seek a new trial from the trial justice but came at once to this court on its bill of exceptions.

All of defendant's exceptions relate to plaintiff's status at the time of her injury and raise a single question: Was the plaintiff a licensee or an invitee while on land controlled by defendant?

The essential facts are not in dispute. It appears in evidence that defendant corporation was organized in 1952 and that plaintiff, a woman fifty-two years of age, was a communicant of St. Thomas the Apostle Church and a member of the Blessed Virgin Sodality, an organization within the church. In answer to a question as to the purpose of the sodality plaintiff replied, "Well, we get together at meetings and we work for suppers and whist parties and all, to make money for the church." Still later she testified that the members of the sodality go to confession and communion once a month, and in reference to the nonspiritual activities of the sodality said, "Oh, yes, we have annual clambakes, and annual suppers and whist parties every month, and food sales every month."

The plaintiff testified that they had planned for a ham and bean supper and that in the afternoon of Friday, January 25, 1957, they gathered in the auditorium, which was in the basement and in the rear of the church building proper, to make preparations for the supper the next day; that there was a parking lot to the side of the church and a cement walk leading from it to the auditorium; that she walked over the parking lot to the cement walk which was covered with a light snow; that she slipped on some ice on the first block of the cement walk and broke her right elbow; and that it was then "about three or a little after, but it was around that time."

There was evidence that an examination of the premises immediately after the accident disclosed a small area of ice on the cement walk which was depressed about one-half inch below the tar surface of the parking area, thereby

allowing water to settle and ice to form. There was also evidence from which the jury could find that the officials of the church had at least constructive notice of the depression in the cement walk prior to January 25, 1957.

On the evidence relevant to the question of plaintiff's status, we are of the opinion that she was proceeding to the church auditorium at the implied request of the church. She was not going to a church service. She was on her way to meet other women, members of the sodality, all of whom were intent on preparing for a supper for which money would be charged and the profit from which would be given to the pastor for the support of the church. It may be conceded that plaintiff received a benefit from the service rendered by the members of the sodality, including herself, in the consciousness that she was assisting in a cause in which she believed wholeheartedly, but the church also received a material benefit. It was clearly a case of mutual benefit.

In 4 Shearman & Redfield, Negligence (rev. ed.) §779, p. 1783, it is stated: "The occupant of land is bound to use ordinary care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, express or implied, for the transaction of business, or for any other purpose beneficial to him. If his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Invitation by the owner or occupant is implied where the person going on the premises does so in the interest or for the benefit of such owner or occupant, or in connection with a matter of mutual interest, or in the usual course of business." See also Restatement, Torts, §332, p. 897; id. §343 (a), p. 939; id. R. I. Annot. §332, p. 114.

In *Comeau* v. *Comeau*, 285 Mass. 578, in referring to the words invitor and invitee, the court said at page 581, "In the case of such an invitor and invitee, there must be

some benefit to the former to render him liable for failure to exercise ordinary care, or some mutuality of business interest."

In *Nottie* v. *Picchione,* 74 R. I. 93, it appeared that the plaintiff was delivering a package for a local department store and was injured when he tripped on a rope stretched across a walk leading to the defendant's house. We there held that the plaintiff was a business invitee and not a mere licensee. While the facts in that case are quite different from those in the instant case, the status of the delivery-man and this plaintiff was essentially the same; the householder received a benefit as did also the church. See also *James* v. *Rhode Island Lodge, No. 12, I.O.O.F.,* R. I. 160 Atl. 746.

In *Kalinowski* v. *Young Women's Christian Ass'n,* 17 Wash. 2d 380, it appeared that the plaintiff, a teacher in the local high school, was an advisor for a Girl Reserves unit of the school. The Girl Reserves was an organization sponsored by the Young Women's Christian Association to aid in the development of adolescent girls. The plaintiff received no salary for her services. Once a month officers of the various Girl Reserves unit met at the Young Women's Christian Association building. A dance was held there and, while not expressly invited, the plaintiff was expected to be present. Tickets were sold and the money collected paid for the music and janitor service, none going to the defendant. The plaintiff slipped on the floor and allegedly received injuries. In holding that she was an invitee the court said at page 390, "It is true she did not pay for admission to the dance, nor was she paid as an employee for her services, but, as hereinbefore stated, she was there to aid the YWCA in a program which it sponsored for the younger girls. We think appellant [defendant], in carrying out this program, was benefited by the services of respondent [plaintiff]."

In *Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802, it

appeared that the plaintiff was a volunteer hostess at the Hollywood Canteen. She slipped on the floor and was injured while dancing with a member of the armed forces on the Canteen's premises. The court stated at page 809, "Thus if plaintiff was on the premises with the express or implied invitation and for the sole benefit of defendant occupier, or for their mutual benefit, defendant owed a duty to plaintiff to exercise ordinary care to render the premises safe and to protect her from injury."

In *Atwood* v. *Board of Trustees, First Presbyterian Church,* 26 N. J. Super. 607, the plaintiff, who was a Sunday school teacher serving without pay, sued to recover for injuries received when she slipped on ice on a walkway into the church. In the course of its opinion the court said at page 610, "despite the voluntary and unrecompensed status of plaintiff, she entered these premises as a matter of duty to the defendant, and for the furtherance of the important interest, albeit a spiritual one, of the church, as distinguished from her own. She was in my view a 'business' invitee and there was owed her the duty of exercising reasonable care for the maintenance of the premises in a reasonably safe condition for her use." See also 3 Scott, Trusts, §402, p. 2148; *Guilford* v. *Yale University,* 128 Conn. 449; *Green* v. *Church of Immaculate Conception,* 288 N.Y. Supp. 769; *Beider* v. *Union of American Hebrew Congregations,* 272 N. Y. 425; *Foster* v. *Roman Catholic Diocese,* 116 Vt. 124.

The defendant contends that plaintiff was a licensee and not an invitee and to sustain that position relies particularly upon cases decided in Connecticut and Florida.

In *Collbaugh* v. *St. Peter's Roman Catholic Church,* 142 Conn. 536, it appeared that the plaintiff was a regular attendant at the church. She desired to enter the church to light a candle for her daughter who was expecting a baby. In attempting to pass through a gap in the shrubbery bordering the steps and platform at the main en-

trance to the church, she tripped on a wire which the sexton had strung about ten inches above the ground to prevent children from passing through the gap. She received injuries and brought suit. The court held that there were two decisive issues: whether the defendant was immune from liability as a charitable corporation and whether the plaintiff was an invitee. The court held in denying relief that she was a beneficiary of the defendant's charitable services and was not an invitee.

As to the first issue stated by the court it is sufficient to say that Connecticut is one of the states which still hold to the immunity of charitable corporations. On the second issue it appears unquestionably that the plaintiff was on the church property solely in her own interest and in that respect differs entirely from the situation in the case at bar.

In *McNulty* v. *Hurley*, 97 So.2d 185 (Florida), the plaintiff had attended mass and while descending steps of the church was pushed from behind by persons unknown to her, fell to the ground, and was injured. The court held that since plaintiff attended a religious service for her own benefit she was at best a licensee. In that case the facts are so different from the facts in the one at bar that it has little value in the determination of the status of Mrs. DeMello.

The defendant also cites *Springer* v. *Federated Church*, 71 Nev. 177, and *Burgie* v. *Muench*, 65 Ohio App. 176. In the *Springer* case, the plaintiff, a church member, was delivering a card file regarding church membership and was injured when she fell while descending the church steps. In denying liability the court said at page 179, "One voluntarily accepting the benefits of a charitable organization may not sue such organization in tort for injuries sustained in connection with the gift charitably bestowed."

In the *Burgie* case the plaintiff, a woman seventy-seven years of age, had formerly belonged to the church but had

moved away. However, she retained her membership in the ladies aid society and attended meetings occasionally. A birthday party was being held in the basement of the church and the plaintiff fell and was injured while passing through a dark corridor. The court held that she was contributorily negligent and also that she was the beneficiary of the church, a charitable organization, either of which barred recovery. For the changed position of the supreme court of Ohio sixteen years later on the question of immunity of charitable corporations, see *Avellone* v. *St. John's Hospital,* 165 Ohio St. 467. As to this state's position on the question of immunity of charitable corporations, see *Glavin* v. *Rhode Island Hospital.* 12 R. I. 411; *Basabo* v. *Salvation Army, Inc.,* 35 R. I. 22.

After a careful consideration of the question of the plaintiff's status at the time of the accident, we are of the opinion that she was an invitee to whom the defendant owed the duty of exercising reasonable care to see that the cement walk was safe for her passage to the church auditorium.

All of the defendant's exceptions in each case are overruled, and each case is remitted to the superior court for entry of judgment on the verdict.

CONDON, C. J. dissenting. In the special circumstances here I am of the opinion that the injured plaintiff was not a business invitee but was rather in the status of a licensee. Therefore I dissent.

*Norman H. Mann, Russell C. King,* for plaintiffs.

*Boss, Conlan, Keenan, Bulman & Rice, John F. Dolan,* for defendant.