91 So.2d 644 (1956)
CITY OF BOCA RATON, a Municipal Corporation, Appellant,
v.
Minda S. MATTEF, Appellee.
Supreme Court of Florida. En Banc.
September 12, 1956.
Rehearing Denied November 1, 1956.
*645 Earnest, Lewis, Smith & Jones, Gedney, Johnston & Lilienthal, and Al J. Cone, West Palm Beach, for appellant.
Warwick, Paul & Warwick, West Palm Beach, for appellee.
THORNAL, Justice.
Appellant City of Boca Raton, which was defendant below, seeks reversal of a judgment *646 in favor of appellee, who was plaintiff below, in an action for damages resulting from the alleged wrongful death of her husband.
Although numerous incidental questions of law are discussed in the briefs, the determining point for decision is the nature of the legal relationship existing between the appellant City and the deceased husband at the time of his tragic death.
In January, 1953, and prior thereto, the deceased Jesse Mattef was engaged in the sign painting business in Boca Raton. At a meeting of the Town Council January 14, 1953, Mr. Mattef presented to the Council a letter offering to paint the town name on the side of the water tower for a figure of $80. The Minutes of the Council meeting showed the following action on the proposal:
"Motion was made by Councilman Brennan that this job be awarded to Mr. Mattef in the amount of $80.00 and that the Town Attorney be requested to draw the necessary contract to protect the Town's interest."
The quoted motion was unanimously adopted. Thereafter Mr. Mattef communicated with the Town Attorney who advised him that the contract had not been written for the reason that he did not have sufficient specifications for the job and that Mr. Mattef should communicate with the Town Engineer with reference thereto, and further, that after sufficient information had been obtained he was to return to the City Attorney who would then prepare the contract.
The record reveals that instead of communicating with the Town Engineer and before any written contract had been prepared, Mr. Mattef, of his own volition, took his paint and equipment out to the water tower and without further agreement of the Town officials and without their knowledge proceeded up the tower to rig his painting equipment. Having done this, he then proceeded to paint the name of the town on the water tank on the top of the tower. While engaged in this work, a rung of a steel ladder to which Mr. Mattef had attached his tackle broke loose, and he fell from the top of the tower resulting in his instant death. We should add that when Mr. Mattef went to the tower he spoke to the Superintendent of the Water Plant, who incidentally did not have charge of the tower, and advised him that he was going to proceed to do the painting. The Water Plant Superintendent made no comment on Mr. Mattef's expressed intention but did pass some of Mattef's equipment up to him.
Under these circumstances, the widow of the deceased filed suit against the City alleging in effect that at the time of his death Mr. Mattef was an employee of the City, that the City owed to him the duty to provide a reasonably safe place to work, that this duty had been breached and as a proximate result thereof the husband came to his death.
Finding as a matter of law that the deceased was an employee, the trial judge presented the case to the jury with instructions appropriate to such finding. The jury thereupon brought in a verdict in the amount of $25,000 in favor of the appellee-widow. Motion for new trial was denied and judgment was entered on the verdict. Reversal of this judgment is now sought.
The appellant City contends that error was committed in finding as a matter of law that the deceased was an employee of the City and, further, that actually Mr. Mattef was a trespasser and was entitled only to the degree of care due trespassers.
The appellee-widow contends that the deceased husband was an employee at the time of his death and that the award of the jury should be sustained on this theory.
As pointed out above, our problem is to decide the legal relationship existing between the deceased and the appellant City at the time of his death. If he was an *647 employee, the case was properly presented to the jury by the trial judge with his instructions. If the deceased was not an employee, then obviously error occurred when the trial judge found, as a matter of law, that he was an employee. The duty and degree of care imposed on appellant will be measured by the relationship between appellant and the deceased.
While this case presents some difficulty in deciding the exact nature of the relationship between the deceased and the City, it appears clear to us that he definitely was not an employee at the time of his tragic death. We observe in passing that the record tenders no question as to the applicability of our Workmen's Compensation Law, F.S.A. § 440.01 et seq., therefore, we offer no comment on it.
Under the law of Master and Servant the relationship of employer and employee requires control and direction by the employer over the conduct of the employee. This exercise of control over the person as well as the performance of the work to the extent of prescribing the manner in which the work shall be executed is the ultimate test of the nature of the relationship between employer and employee. An employee is one who for a consideration agrees to work subject to the orders and direction of another, usually for regular wages but not necessarily so, and, further, agrees to subject himself at all times during the period of service to the lawful orders and directions of the other in respect to the work to be done. Customarily, the employer determines both the method and manner in which the work is to be done as well as the time and tenure of the service. See Labatt's Master and Servant, 2nd ed., Sec. 2.
These essential elements of an employer-employee relationship were lacking as between the appellant and the deceased. Consequently, it was error for the trial judge to determine that the relationship existed, and it was further error to charge the jury that because of the existence of this relationship, the appellant owed to the deceased the duty to use due diligence in providing for him a safe place to work. Obviously, this case will have to be retried and in the interest of proper disposition of the matter upon a subsequent trial we deem it appropriate, at least on the basis of the record now presented, to define the relationship that actually did exist between the decedent and the appellant.
While the proposal to do the work was conditionally accepted by the City, it should be noticed that the acceptance was conditioned upon the drafting of a contract by the Town Attorney to protect the Town's interest. Just what provisions were contemplated are not known but it is clear that the execution of a formal document was contemplated as a condition precedent to the undertaking of the work by Mr. Mattef. For some reason sufficient to himself he determined to disregard this prerequisite and entered upon the work on his own volition. If the contract had been executed as contemplated and thereafter deceased had entered upon the work in accordance with the provisions of the contract, he then would have occupied the position of an independent contractor who, while not entitled to the same degree of care imposed upon an employer for the benefit of an employee, would have been entitled to impose upon the City a degree of care commensurate with the circumstances and the nature of the work to be undertaken. Vanlandingham v. Florida Power & Light Company, 154 Fla. 628, 18 So.2d 678. The contract was not executed and, therefore, the relationship between the deceased and the City was not that of an independent contractor.
Under the circumstances revealed by this record, the deceased was a volunteer. He had not yet reached the status of an invitee for the simple reason that he had not yet been invited by the appellant to enter upon the undertaking. An invitee is *648 normally considered to be one who enters upon the premises of another for purposes connected with the business of the owner or occupant of the premises. In the matter before us, while to some extent the deceased entered the premises of the appellant in connection with the business which he had theretofore discussed with the appellant, his voluntary undertaking was certainly not pursuant to the arrangement previously made and still in its formative stages.
We cannot consider the deceased to be a trespasser for the reason that he at least had implied permission to do what he did in that the head of one of the departments of the City was present and did not stop him from climbing the water tower, but on the contrary, at Mr. Mattef's request, assisted him in getting some of his brushes and equipment to the top of the tower. By a process of elimination, therefore, we come to the conclusion that when the deceased of his own volition in the fulfillment of an undertaking related to his own business of sign painting entered upon the premises of the appellant, climbed the water tower and undertook the work, he was at most a licensee. In circumstances such as those before us a licensee is one whose presence on the property of another is tolerated or permitted but not invited. Here, the deceased occupied the position in nature of a licensee with permission but without invitation. Certainly, no invitation was extended to him to climb the water tower and undertake the work when he did so. As a matter of fact, his conduct was premature and he had not yet established any contractual relationship with the appellant.
A licensee by permission is one who for his own convenience or for the purpose of fulfilling some mission of his own enters upon the premises of another by the permission or sufferance of the owner or occupant but without the invitation of the owner and in the absence of an expressed or implied contractual arrangement. The licensee by permission occupies a status only slightly better than that of a trespasser insofar as the liability of the owner of the premises is concerned. Such a licensee takes the premises as he finds them and the duty of the owner of the premises is to refrain from wanton negligence or willful misconduct that would injure the licensee. If the owner has knowledge of pitfalls, booby traps, latent hazards or similar dangers, then a failure to warn such a licensee could under proper circumstances amount to wanton negligence but there must be knowledge of the danger by the owner combined with knowledge that the licensee is about to be confronted with the danger. Beyond that, he is not obligated to make provision for the safety of the one who enters his premises under such circumstances.
While the tragedy of the situation presented to us challenges the sympathy of the court, we are nonetheless constrained to find that there was error in the trial below as hereinabove pointed out.
The judgment appealed from is therefore reversed and the cause is remanded for appropriate proceedings consistent with this opinion.
Reversed and remanded.
DREW, C.J., and THOMAS, HOBSON and O'CONNELL, JJ., concur.
TERRELL, J., dissents.
ROBERTS, J., not participating.